UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

# FILED

APR 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,    )
                             )
                             )
v.                           )    Criminal No. 05-0095 (PLF)
                             )
MARK A. BURNETTE,            )
                             )
          Defendant.         )
                             )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's motion for clarification of sentence, filed by defendant Mark Burnette *pro se*. At the time of sentencing, the Court recommended that Mr. Burnette be enrolled in the Bureau of Prisons' 500-hour residential drug treatment program, and he apparently has been so registered. Mr. Burnette reports that he is now in the second of the three-phase drug abuse treatment program and is scheduled to graduate on September 20, 2007. He reports that at that point he could be eligible for transfer to a Community Corrections Center provided, however, that he "provide BOP staff with documentation proving that he did not receive a two-level firearm enhancement at sentencing." Motion at 1. He therefore asks the Court to review the transcript of the sentencing and "render clarification in regard to the application of such an enhancement, as necessary to the cause." Motion at 2.

The Court has carefully reviewed the transcript of the sentencing proceedings held on August 18, 2006. Unfortunately for Mr. Burnette, the transcript shows quite clearly that the Court did add two levels to the base offense level for the possession of a weapon in conjunction with a drug offense. See Transcript at 13, 16, 35. The Court noted that such an enhancement

was explicitly agreed to in the plea agreement signed by the defendant. See id. A copy of the

relevant pages of the transcript is appended to this Memorandum Opinion and Order. The

clarification the defendant seeks therefore is not possible. Accordingly, it is hereby

ORDERED that defendant's motion for clarification of sentence is DENIED.

SO ORDERED.


_____
PAUL L. FRIEDMAN
United States District Judge

DATE: 4/25/07

cc:     Elisa Poteat, Esq.
        Assistant United States Attorney

        Jonathan Jeffress, Esq.
        Assistant Federal Public Defender

        Mr. Mark A. Burnette
        #48255-083
        FPC Cumberland
        P.O. Box 1000
        Cumberland, MD 21501

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
 2
      UNITED STATES OF AMERICA,      . Docket No. CR-05-095 (PLF)
 3                                   .
           Plaintiff,                .
 4                                   . Washington, D.C.
              v.                     . August 18, 2006
 5                                   . 9:30 a.m.
      MARK A. BURNETTE,              .
 6                                   .
           Defendant.                .
 7      . . . . . . . . . . . . . . .
 8                   TRANSCRIPT OF SENTENCING
              BEFORE THE HONORABLE PAUL L. FRIEDMAN
 9                 UNITED STATES DISTRICT JUDGE

10    APPEARANCES:

11    For the Plaintiff:        United States Attorney's Office
                                By: Elisa Poteit, Esquire
12                              555 4th Street, Northwest
                                Washington, D.C. 20004
13

14    For the Defendant:        Federal Public Defender's Office
                                By: Jonathan Jeffress, Esquire
15                              625 Indiana Avenue, Northwest
                                Washington, D.C. 20004
16

17    Court Reporter:           Linda L. Russo, RPR
                                Official Court Reporter
18                              Room 6403, U.S. Courthouse
                                Washington, D.C. 20001
19                              202.354.3244

20

21

22

23

24

25    Proceedings reported by machine shorthand, transcript produced
      by computer-aided transcription
```

**FILED**

JAN  8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT



1   also Ms. Poteit's memorandum in aid of sentencing, which has
2   now been corrected on a couple of particulars orally, and also
3   the file in the case, and the plea agreement, and so forth.
4           Does Probation have the reports and recommendations,
5   I mean the receipts and acknowledgments, or do you have the
6   receipts and acknowledgments?
7           THE CLERK:  Yes, Your Honor.
8           THE COURT:  May I see them, please.  Thank you.  With
9   respect to the receipts and acknowledgments signed by the
10  government and by the defense, Ms. Poteit for the government
11  says there are no material factual inaccuracies, and then I
12  have a photocopy signed by you, Mr. Jeffress, but not signed by
13  the defendant which says there are material factual
14  inaccuracies.
15          MR. JEFFRESS:  Your Honor, that was -- I'm certainly
16  going to have Mr. Burnette sign it.  That was to the original
17  draft PSR which had some substantial errors in terms of
18  calculating Mr. Burnette's range.  They were corrected.  So I
19  don't think we have any objections to the PSR in its current
20  form.
21          THE COURT:  Okay.  In that case let me tell you what
22  I think the guidelines suggest.  There is one other issue I
23  think I need to raise with you before I tell you what I think
24  the guidelines suggest.
25          The presentence investigation report says that the

1    base offense level is 22 because the instant offense involved

2    four grams of crack cocaine or cocaine base.  And I haven't

3    looked closely at the language in the plea agreement, but I

4    think that that's what it says.

5        The guidelines, if you look at the guidelines, 2D1.1,

6    if you look at level 22, it says it's a level 22 if there are

7    at least three grams but less than four grams.  As I understand

8    the plea agreement, there are not less than four grams.  There

9    are four grams.  If you look at the next section of the

10   guidelines, level 24, it says at least four grams but less than

11   five grams.

12       So I think that the way to read the guidelines

13   puts -- the proper way to read the guidelines puts Mr. Burnette

14   at an offense level 24, not an offense level 22.  And I'm

15   certainly willing to hear anybody's view on that, but I just

16   think the probation officer misread the guidelines.

17       MR. JEFFRESS:  Your Honor, could I have one second

18   with government counsel?

19       THE COURT:  Sure.

20       (There was a pause in the proceedings.)

21       MS. POTEIT:  Will you indulge us long enough to see

22   what documentation we can find on the exact drug amount?

23       THE COURT:  Sure.  That's a good idea.

24       MS. POTEIT:  I did not bring the entire file.

25       THE COURT:  Take your time.

 1          (There was a pause in the proceedings.)

 2          THE COURT:  The plea agreement does say your client

 3   agrees that he's accountable for four grams of cocaine base

 4   also known as crack.

 5          MR. JEFFRESS:   I know I would have checked that

 6   against the DEA-7 at the time, but I just wanted to be

 7   cautious.

 8          Your Honor, I think that's correct.  I think Your

 9   Honor is correct.

10          THE COURT:  In that case, I do disagree slightly with

11   the presentence report, and I find that the proper base offense

12   level for the reason I just stated is a level 24.  And then

13   under 2D1.1(b)(1) we add two offense levels for the possession

14   of the weapon in conjunction with the drug offense, and that

15   was also agreed to in the plea agreement.  So that gets us to a

16   level 26.

17          And then as we just discussed, there will be a three

18   level downward adjustment for acceptance of responsibility

19   under 3E1.1 because of the plea, which is a level 23.  Then we

20   look at the criminal history which is laid out in the

21   presentence investigation report, and unless anybody disagrees

22   with the allocation of criminal history points, it appears that

23   because of the conviction in 1990 for carrying a pistol without

24   a license and assault with a dangerous weapon, there's three

25   criminal history points.  No criminal history points for

1   carrying a dangerous weapon later that year, I guess.

2          For possession of PCP, and marijuana with intent to

3   distribute in 19 -- it looks like the arrest was in '93 but the

4   sentencing was in 1997, one criminal history point.  A

5   shoplifting case in 1996 in Virginia, one criminal history

6   point.  Possession of marijuana, a misdemeanor, in 2005, one

7   criminal history point, for a total of six criminal history

8   points.

9          And if that's right, that puts him in criminal

10  history category three.  With an offense level 23, criminal

11  history three, that would be 57 to 71 months.

12         Is there any disagreement with that?

13         MS. POTEIT:  No, Your Honor.

14         THE COURT:  Mr. Jeffress, do you read the guidelines

15  the same way I do?

16         MR. JEFFRESS:  Yes, Your Honor.

17         THE COURT:  So then we get to the crack/powder issue.

18  And as both of you know, I have in other cases conducted an

19  analysis of the Sentencing Commission's view of this, and I

20  have accepted extensive briefs from the defense Bar prepared by

21  Mr. Jeffress' office, and from the government prepared by Ms.

22  Poteit's office, and Ms. Poteit has appended to her pleading in

23  this case the earlier brief.  Mr. Jeffress has not, because I

24  think I said here in this case and in other cases that all of

25  the prior briefing by the Federal Public Defender and by the

1    U.S. Attorney's Office on this issue is incorporated by

2    reference, and it's as if you have made all the arguments here,

3    and you don't have to make them all over again.

4         I've concluded that a 20 to 1 ratio rather than a 100

5    to 1 ratio is appropriate in these cases.  By reference to the

6    3553(a) factors, and I can summarize my views on that again,

7    but I also recognize (A) that, what I have said is that under

8    3553(a) there are some of the factors that can be viewed

9    categorically in virtually all crack cases, and then there are

10   always factors under 3553(a) that in the primary approach under

11   3553(a) is to look at the particular individuals, so we have to

12   talk about both sort of simultaneously, I guess.

13        There is a recent Second Circuit case within the last

14   week that says that you can never look at the 3553(a) factors

15   categorically, and specifically in this context.  I don't

16   agree, but the case law seems to be developing.  We now have I

17   think the First, Second, Fourth and Eleventh Circuit agreeing

18   with Ms. Poteit's and the government's position, and a number

19   of District Court decisions agreeing with my position.  But no

20   Circuit decisions yet.  And then of course we have Judge Bates'

21   decision in this Circuit agreeing with the government's

22   position.

23        So do we want to talk about those, or should we

24   revert to a discussion of -- let me just say this.  Add a 20 to

25   1 ratio rather than a 100 to 1 ratio.  As I said, if he's at

1   offense level 23, criminal history category three, it's 57 to
2   71 months.  If we take the four grams and multiply it by 20,
3   it's 80 grams.  And then looking at the powder guidelines, my
4   analysis would be that he'd start with an offense level 16
5   under 2D1.1 and you would add two levels for the weapon, which
6   would be an 18.  And then you would under 3E1.1 reduce it by
7   three offense levels to a level 15.  The criminal history
8   category will remain the same.  It will be at offense level 15,
9   criminal history category three would be 24 to 30 months rather
10  than 57 to 71 months.

11          So we can proceed to hear argument on that issue, and
12  mitigating factors, and the rest of the allocution, or we can
13  take a pause and discuss with Mr. Cooper now that he's here his
14  most recent report and what his view would be if I permitted
15  Mr. Burnette to remain on bond and voluntarily surrender.  In
16  other words, I'm going to sentence him today, and the choice is
17  whether to lock him up today or whether to permit him to
18  voluntarily surrender.  And the question is if he's permitted
19  to voluntarily surrender, what would his status be in the
20  meantime for the next probably four to six weeks.

21          So, Mr. Cooper, I'm sorry to drag you away, but we
22  need your input, I think.  Good morning.

23          PRETRIAL:  Good morning.  There's obviously been a
24  change in circumstances since this report was submitted.  The
25  Superior Court case has now been dismissed.  That was

1    courage to do something.  I don't think I ever said that.  I
2    think I said, if I said it at all, that the Commission didn't
3    have the courage to do what it was charged with doing.  I
4    wouldn't criticize Congress for not having the courage.
5    They're a separate branch of government.  They do what they
6    think is appropriate.  But the Commission is part of the
7    Judicial branch, supposedly, or some sort of a hybrid that
8    doesn't violate a separation of powers, according to the
9    Supreme Court.  And I know my view is, and whether I said it on
10   the record or not I'm not sure, but obviously Ms. Poteit got it
11   from someplace, that the Commission hasn't had the courage of
12   its convictions, and many of them are friends of mine, and to
13   write guidelines that reflect their best empirical judgment in
14   this area, and that the best empirical judgment is found in the
15   reports.
16        In any event, one of the factors is what the
17   Commission thinks under 3553(a), and the Commission thinks that
18   20 to 1 is appropriate.
19        I'm not going to reiterate everything I said in the
20   Harrison-Brown oral decision or in the Lewis decision, or in
21   many of the others that Ms. Poteit has had to sit through, and
22   her colleagues have had to sit through, but I incorporate them
23   by reference.
24        But I will say this, that under 3553(a) the Court is
25   supposed to impose a sentence sufficient, but not greater than,

1    necessary to comply with the purposes set forth in the statute.

2    And the question is what sentence is sufficient but not

3    excessive to achieve those purposes.

4            The first factor is the nature and circumstances of

5    the offense, and the history and characteristics of the

6    defendant.  Well, the offense is serious.  The quantity is four

7    grams.  One can argue about whether that's significant or not.

8    We have all seen cases where it's substantially more than four

9    grams of crack cocaine.

10           But there was a gun involved.  He's acknowledged the

11   gun, as well as the crack.  We all know that the combination of

12   drugs and guns is serious and speaks to the very things that

13   Ms. Poteit was talking about before in terms of what it's done

14   to the city.  Guns are used by drug dealers sometimes to

15   protect their drugs, to deal with their competitors, and to

16   deal with danger on the streets.  Drugs and guns together are

17   serious.

18           The history and characteristics of this defendant,

19   well, we get two pictures of this defendant.  One is somebody

20   that's been involved in drug offenses before, and somebody

21   who's been involved in gun offenses before, and while he was

22   very young, a violent gun offense before.  But also possession

23   of guns on other occasions, possession of drugs, possession

24   with intent to distribute drugs on other occasions.

25           We know he's got a drug problem of his own, which

1   needs to be dealt with through rehabilitation, not by branding
2   him a criminal, but he's dealt drugs in the past; he's
3   possessed drugs in the past; he's violated the laws in the
4   past; he's been convicted in the past.
5           And we also know he's been less than compliant with
6   the conditions that he's had since this case has begun.  He's
7   been up and down.  One of the magistrate judges revoked him at
8   one point.  I contemplated revoking him on more than one
9   occasion I know, and there have been problems as Mr. Cooper has
10  recounted in his current report and in his oral report today,
11  and as Pretrial has recounted previously.
12          On the other hand, he's a man whose family is here
13  and is very supportive, and as both Mr. Jeffress and Ms. Poteit
14  know, they have lots of cases in this Court and across the
15  street where that just isn't so, where people don't have that
16  kind of support.  That's important.  It says something about
17  the person and it says something about the structure of his or
18  her life.
19          He's been given time to deal with the problems of his
20  son during the course of this.  His daughter is obviously very
21  much in love with her father, and according to his daughter's
22  mother, Mr. Burnette has been a very important part of the
23  daughter's up-bringing.
24          He has worked consistently, sometimes more than one
25  job.  Those are important factors.  So the nature and

1   characteristics of the offense are serious. The history and
2   characteristics of the defendant, both negative and positive.
3   The next thing in the statute is the need for the sentence
4   imposed to reflect the seriousness of the offense to promote
5   respect for the law and to provide just punishment. This is
6   where I say that this is a factor that can be viewed both
7   categorically and individually even though the Second Circuit
8   has just said that none of these factors should be viewed
9   categorically.

10         As the Sentencing Commission has said, crack
11  offenses, all drug offenses are serious, all drug sales are
12  devastating on the communities. The users are victims. But as
13  the Sentencing Commission has said that while crack is serious,
14  it's not 100 times as serious as powder. And I think that the
15  history over the years has proved that to be so. I have always
16  felt even when we had mandatory guidelines, that when I
17  sentence people, some of the people I had to sentence for crack
18  offenses, that it wasn't promoting respect for the law because
19  the disparity between crack and powder just wasn't fair. And
20  the seriousness of the offense wasn't 100 times worse. And so
21  a just punishment is substantially less than what 100 to 1
22  would lead to in some cases.

23         And in this case four grams is not a lot. It's not
24  insubstantial, but it's not a lot. On the other hand, the
25  offense is serious because guns were involved. A gun was

1    involved.  And I do have to consider the digital scales, and
2    the baggies, and all these other things.
3            Adequate deterrence, I don't think 57 to 71 months is
4    necessary for Mr. Burnette in view of his recent history, in
5    view of the fact that his most serious offense was many years
6    ago.  But he still has been involved in the criminal justice
7    system in recent years as well.  But to deter him, obviously,
8    we have both general deterrence, which is reflected in the
9    statute, in the provision that says that a sentence should be
10   sufficient to protect the public from further crimes by this
11   defendant.  As long as anybody is locked up, they're not going
12   to commit further crimes.  And that's specific deterrence.
13           And then there's general deterrence, affording
14   adequate deterrence generally.  Needed educational/vocational
15   training.  In the case of Mr. Burnette I will recommend, unless
16   Mr. Jeffress doesn't want me to, the 500 hour residential drug
17   treatment program while Mr. Burnette is locked up, because that
18   is a terrific program.  It's a hard program, but it's a real
19   opportunity over the course of 500 hours while somebody is in
20   prison to seriously deal with the drug problem.
21           In some cases it also enables one to be released
22   earlier.  The Bureau of Prisons can on its own decide that
23   someone should be released up to a year earlier than he
24   otherwise would be, but under the current Bureau of Prisons
25   guidelines I don't think that's so when a gun is involved.  I

1   think that Mr. Burnette is eligible for the program, but I'm
2   not sure that he is eligible for early release.
3        But, nevertheless, that's one of the purposes of
4   sentencing, and I'll recommend drug counseling and treatment
5   while he's locked up, and I'll recommend the 500 hour
6   residential drug treatment program.
7        So in view of all of the factors, both the
8   crack/powder factor and the individualized factors, the
9   question then becomes what's the appropriate sentence here.
10  And, as I said, I'm not going to reiterate all my views about
11  crack/powder today because we have been here long enough
12  already.
13       The guidelines are advisory, but I'm going to use as
14  my touchstone the guidelines that would be applicable if there
15  were a 20 to 1 ratio, which would be offense level 15, criminal
16  history category three, which is 24 to 30 months.
17       Is there anything else anybody wants to say before I
18  impose sentence?
19            MR. JEFFRESS:  No, Your Honor.
20            MS. POTEIT:  No, Your Honor.
21            THE COURT:  Mr. Burnette, do you have anything else
22  you want to say?
23            THE DEFENDANT:  No, sir.
24            THE COURT:   In view of all that I have just said,
25  and in view of everything that everybody else has said here